[Civ. No. 15643. Second Dist., Div. One. Oct. 15, 1947.]

TOD ELLSWORTH STICE, Respondent, v. CLARA J. STICE, Appellant; MARY M. JOHNSTON, Corespondent.

Albert G. Bergman for Appellant.

Hahn, Ross & Goldstone for Respondent.

DORAN, J.—The original action herein was one for divorce instituted by the husband. The defendant wife, who filed a cross-complaint, now appeals from the judgment, excepting that portion granting the wife separate maintenance and custody of the two children, boys aged about 6 and $3\frac{1}{2}$ years respectively. The record discloses that the parties were married June 23, 1934, and that in 1939 the husband, Tod Stice, entered the service of the Earl O. Stice Company, a plumbing business established by the husband's father. According to respondent's brief, "In 1939 Earl O. Stice (the father) took Tod into his business (Rep. Tr. V. 1, p. 10) and made a gift to Tod of a one-fourth interest in the business (Rep. Tr. V. 1, pp. 11, 12, 13, 175, 181), which he later increased, also as a gift, to a one-third interest (Rep. Tr. V. 1, pp. 12, 13, 18, 19)." In this connection it may be noted that a similar interest was given by the father to another son, Gary Stice, and that the father retained the remaining interest in the business. Written agreements in reference to these gifts were signed by the father, the two sons, and the wives of the respective parties including Clara J. Stice, appellant herein. In the agreement of March, 1941, under which the interest of Tod Stice was increased to a one-third partnership interest, occurs the following provision: "It is the intent of this agreement that the interest of this company shall remain in the hands of Earl, Gary and Tod Stice, their beneficiaries or direct descendants, and the legally adopted children of Gary Stice. Interest shall divert to no one not bearing the surname of Stice." The respondent's brief states that "Clara Stice was the beneficiary under the will of Tod Stice."

After being taken into the firm Tod Stice drew a stipulated salary which began at $45 per week; this was later increased to $60, and ultimately to $200 per week. Respondent's full time was devoted to the business. In addition to this salary, at the end of each year the company profits were divided into three equal parts, which, however, were not withdrawn but set up in an "Earnings" account for each partner, reflecting the unwithdrawn, accumulated amounts. As of December 31, 1944, such accumulation credited to the earnings account of Tod Stice, respondent, amounted to the sum of $107,700.51, which the appellant wife asserts to be community property.

In reference to the wife's claim of community property, the major question involved herein, appellant's brief calls attention to the fact that, "Commencing with the year 1939, plaintiff, who had no other income or earnings than that derived from the partnership business, made income tax returns at the end of each year, to the California State and United States Governments, in which one-half of his earnings were claimed by his wife, defendant. (Rep. Tr. p. 1074, lines 1 to 23.) These income tax returns were made by plaintiff to show his withdrawal of $800.00 monthly during the year and to further show as his earnings the divided, but unwithdrawn profit of the partnership business, credited to his account. (Rep. Tr. p. 1002, lines 19 to 24; p. 149, lines 5 to 9.) The income tax returns, as prepared, consisted of two separate returns; one for plaintiff and one for defendant wife. . . . After said returns were prepared plaintiff took the forms to be signed by defendant wife, in which she claimed 'one-half husband's community income' and after he had first read them, asked defendant to sign the same. (Rep. Tr. pp. 1076, 1077, 1078.)'' This is answered in respondent's brief by the statement that "In splitting his income for income tax purposes, Tod Stice, (as stated on cross-examination), 'did not indicate that she owned a half interest' . . ."; that "The allocation to the partners on the books of the company (of the accumulation hereinbefore referred to) was a matter of bookkeeping," and that the accumulation was not community, but separate property in which the wife had no interest.

Allegations of cruelty contained in the husband's divorce action were denied *in toto* by the wife, and the latter's cross-complaint for separate maintenance was based upon the husband's "continued and continuous course of amorous and

adulterous relations and associations with one MARY M. JOHN-STON, who is the wife of the brother of this defendant and cross-complainant,'' covering a period of two years or more. The husband's answer to the cross-complaint admits that ''he has embraced and kissed her (Mary M. Johnston)'' but denies the alleged adultery. Likewise, an answer filed by the co-respondent denies adultery but admits ''that for the past two years she has seen him and visited with him on many occasions, and that he has kissed her and caressed her.''

The trial court found that the husband was not entitled to a divorce; that no adultery had been proven but that the husband's ''conduct in meeting the said Mary M. Johnston and in hugging, embracing and kissing her did inflict mental suffering and anguish'' upon the wife, entitling the latter to separate maintenance. The court awarded the sum of $100 per month for the support of the wife and $200 per month for the support of the children, together with attorney fees. Certain designated community property and joint tenancy property were ordered to be divided between the parties, and the court found ''That the interest of Tod Ellsworth Stice in the Earl O. Stice Company, a co-partnership, is his sole and separate property.'' It is pointed out in appellant's brief that the trial court ''made no findings as to the accumulated and unwithdrawn ownership of plaintiff (husband) in the and his earnings placed and credited to his unwithdrawn earnings account on the books of the copartnership, as to whether the same were community or separate property.'' As hereinbefore indicated, the nature of this unwithdrawn accumulation of $107,700.51 may be deemed the crucial question presented on this appeal.

It may be noted that the wife's cross-complaint had alleged ''That said community property further consists of an interest owned by the plaintiff (husband) in . . . the Earl O. Stice Company,'' asking that the community property be awarded to the wife in entirety. The husband's answer to the cross-complaint ''denies that cross-complainant owns any interest, community or otherwise, in . . . the Earl O. Stice Company,'' and alleges that ''the amount of money actually paid him each month for his services is $800.00 and that any accumulations in the EARL O. STICE Company cannot be withdrawn without the consent of all partners.'' Evidence concerning this matter was introduced by both parties. It will thus be seen that the nature of this not inconsequential accumulation,

segregated each year in an "earnings" account under the husband's name, was a vital issue calling for a definite finding of fact and a proper conclusion of law based thereon. And in this connection it should be borne in mind that the husband's *interest* in the partnership business received as a gift, and therefore separate property, is to be distinguished from *earnings* which have resulted, at least in part, from the husband's full-time services devoted to the partnership business.

■ "The general rule applicable in this class of cases," as stated in 3 California Jurisprudence Ten-Year Supplement, page 534, "is that where a husband or wife owned a business before marriage and continued to conduct it thereafter, the portion thereof attributable to the personal activity, ability and capacity of the person who conducted the business will be regarded as community property. The usual method of determining the value of a husband's interest in a business in which he was engaged at the time of marriage is to allow to the husband the usual rate of interest on the amount invested on the basis of a long investment, well secured." In *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277, 281 [132 P.2d 600] the rule is stated as follows: "It is settled by numerous decisions in this state that even though the husband's business has been carried on by him before marriage, and his profits after marriage are derived from the same business . . . yet the entire profits so realized are not necessarily separate property of the husband. The capital which the husband brings to the marriage partnership is his own separate property, but it is a question for the court to determine what portion of the profits thereafter arises from the use of this capital and what part arises from the activity and personal ability of the husband. *That portion of the income due to the 'personal character, energy, ability and capacity of the husband' is community property.*" (Italics added.) In the late case of *Cozzi* v. *Cozzi* (August, 1947), 81 Cal.App.2d 229 [183 P.2d 739], recognizing the same rule, the court says: ". . . it is not the profits of the business, but only the ascertained earnings of the defendant in managing, laboring on and caring for such property, in the nature of salary, wages or the equivalent thereof, which would be community property."

The husband's interest in the plumbing business involved herein, was not acquired prior to marriage; it was a gift by the husband's father made in 1939, about five years after the marriage of Tod and Clara Stice, and thereafter Tod

Stice devoted his full time, "activity, ability and capacity" to the conduct of this business. The record discloses that these were particularly prosperous years; that the business increased "tremendously." According to the testimony of Earl O. Stice, respondent's father, Tod Stice, who had entered the firm without experience, became more skillful and therefore more valuable, and "applied himself diligently . . . to the benefit of the business" during the years 1940, 1941, 1942, 1943, 1944 and 1945. It was, in fact, stipulated that when the husband "applied that skill, that would result in a benefit to the company." While the respondent's brief naturally seeks to minimize Tod Stice's value to the firm, the father's testimony quoted above, in respect to the son's value is material evidence on that question. Appellant's brief also suggests that "the fact that the partners continued to segregate and set aside Tod Stice's share of the earnings of the partnership, is in direct contradition of the claim that he was worthless to the firm."

It is not the purpose of this decision to determine the value of respondent's services to the firm nor to decide what part of the $107,700.51 accumulated in the husband's unwithdrawn "earnings" account shall be deemed to represent community property. In the language of *Witaschek* v. *Witaschek,* 56 Cal.App.2d 277, 282 [132 P.2d 600], hereinbefore cited, it "became the duty of the trial court to apportion to the community such share of the husband's earnings as was due to the latter's industry and skill. . . ." This, the trial court did not do. And a failure to find upon material issues is prejudicial error entitling appellant to a reversal. (*Estate of Pendell,* 216 Cal. 384 [14 P.2d 506] ; *Sturdevant* v. *Sturdevant,* 3 Cal.App.2d 443 [39 P.2d 433].)

In this connection may also be noted appellant's contention that "the husband, by and through his acts, conduct, and the circumstances revealed by the record herein, by simple agreement, converted one half of his separate interest in the partnership profits into community property." As was said in *Heck* v. *Heck,* 63 Cal.App.2d 470, 474 [147 P.2d 110], "A husband may give his wife any portion of his separate estate as her separate property, or, a husband or wife may, by simple agreement, convert separate personal property into community property. (Sec. 158, Civ. Code.)" In that case, as in this, the husband denied that the wife had any interest in a certain partnership; there as here, individual income tax

returns had been prepared under the husband's direction, dividing partnership income between husband and wife. The court said: "Plaintiff testified that he did not give defendant any part of the partnership profits to be her separate property so it is not surprising that the trial judge construed the income tax returns as evidencing an agreement between plaintiff and defendant converting one-half of plaintiff's separate interest in the partnership profits into community property. None of these profits were withdrawn but remained with the partnership." Also, in the instant case the wife testified that the husband "always said that everything we had was community property—belonged to both of us," and that "he said it hundreds of times." The weight and effect of these items of evidence was, of course, a matter for the trial court to determine.

Appellant's contentions that the finding that the husband and corespondent did not commit adultery was against the evidence, and that the trial court erred in failing to award the wife separate maintenance upon the ground of adultery as well as cruelty, are answered by the familiar rule that it is not the province of the appellate court to weigh the evidence. The same may be said in reference to appellant's claims that other findings were against the evidence, such as that certain property should have been divided as community property rather than treating it as property held in joint tenancy. No abuse of discretion is shown in respect to the custody of the minor children.

There is no merit in respondent's claim that "The appellant is estopped to attack the judgment by reason of having accepted the benefits of the judgment of the trial court." This contention is based upon the wife's acceptance of certain items of property shortly after the conclusion of the trial but before the judgment was signed. Thus, joint bank accounts were divided; the proceeds of 100 shares of General Electric Corporation stock were divided; a Mercury sedan already in the wife's possession is alleged to have been "accepted" by reason of a transfer of $1,238.40 to the husband out of a joint savings account, representing the value of the automobile; and the occupancy by Mrs. Stice of the joint tenancy home and furnishings is cited as evidence that the wife is enjoying "the fruits of a judgment." Other property, such as stock in Twentieth Century Fox Film Corporation, Kennecott Copper Corporation and Pan American Airways,

which under the judgment was to be divided, had not been so divided or "accepted" by the wife. Moreover, as hereinbefore indicated, the judgment made no disposition of one of the most valuable items, the accumulated earnings account of the husband. The cases cited by respondent are not applicable to the state of facts disclosed by the record herein.

The judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

York, P. J., and White, J., concurred.